# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BATTLE-ABC, LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>SOLDIER SPORTS, LLC, and JEFFREY EVANS,<br><br>　　　　　Defendants. | 8:18CV508<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Partial Summary Judgment, ECF No. 43, filed by Plaintiff Battle-ABC, LLC ("Battle-ABC"). For the reasons stated below, the Motion will be granted in part.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Battle-ABC is a Nebraska limited liability company with its principal place of business in Nebraska. Defendant Soldier Sports, LLC ("Soldier Sports") is also a

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

Nebraska limited liability company with its principal place of business in Nebraska. Defendant Jeffrey Evans ("Jeffrey") is an individual residing in Nebraska and is the founder and Chief Executive Officer (CEO) of Soldier Sports.

Battle-ABC manufactures and sells a mouth-and-lip guard called the Oxygen Lip Protector ("the OLP") that allows the wearer to breathe and drink water without obstruction. Soldier Sports manufactures a similar device called the Elite Air Lip Protector, giving rise to this litigation.

Jeffrey and Michael Evans ("Michael") invented the OLP while they worked with Battle Sports Science, LLC (Battle Sports), the predecessor of Battle-ABC.[2] The OLP is covered by three utility patents: Patent Nos. 8,931,488 ("the '488 Patent"), 9,333,413 ("the '413 Patent"), and 9,717,975 ("the '975 Patent") (collectively the "Asserted Patents").

Utility patent protection for the OLP was first sought in provisional patent application 61/554,331 ("the '331 Provisional Application"), filed with the United States Patent and Trademark Office (USPTO) on November 1, 2011.[3] On November 1, 2012, patent application 13/666,698 ("the '698 Application"), claiming priority from the '331 Provisional Application, was filed with the USPTO resulting in the issuance of the '488 Patent on January 13, 2015. On December 5, 2014, patent application 14/562,301 ("the '301 Application"), a continuation of the '698 Application, was filed with the USPTO resulting in the issuance of the '413 Patent on May 10, 2016. On May 6, 2016, patent

---

[2] There is a dispute of fact as to whether Chris Circo was also a co-inventor of the OLP. For purposes of this Motion it will be assumed that he did not participate in the invention of the OLP.

[3] The '331 Provisional Application is also identified as Attorney Docket No. P008.

2

application 15/148,684 ("the '684 Application"), a continuance of the '301 Application was filed with the USPTO resulting in the issuance of the '975 Patent on August 1, 2017.

In October 2011, when Battle Sports began the process of seeking patent protection for the OLP, Michael asked to be listed as "the Inventor." Emails, ECF No. 47-2, Page ID 1109. Chris Circo, CEO of Battle Sports, responded "[Michael] can be listed but only if an assignment is made contemporaneously." *Id.* at 1108. An Assignment purporting to assign all rights in the OLP to Battle Sports was drafted. The Assignment stated that Michael, Circo, and Jeffrey invented the OLP. Jeffrey confronted Circo about Circo being listed as a co-inventor and said he did not want to sign the Assignment because Circo was not an inventor. Jeffrey Aff., ECF No. 47-1, Page ID 1100. Circo told Jeffrey that he had to sign the Assignment exactly as it was written if he "wanted a fucking paycheck." *Id.* "Circo has also threatened [Jeffrey's] life and said he was going to kill [Jeffrey]." *Id.* Jeffrey signed the Assignment on October 23, 2011, because he felt that he had no choice except to sign the Assignment as written. *Id.* Michael also noticed the alleged error and confronted Circo, who demanded Michael sign the agreement as written. Michael Aff., ECF No. 47-2, Page ID 1106. Michael signed the Assignment on October 24, 2011, and Circo signed on October 31, 2011. Jeffrey, Michael, and Circo were listed as the inventors on the '331 Provisional Application,[4] the '698 Application, the '301 Application, and the '684 Application.

The Assignment stated as follows:

---

[4] When Michael objected to Circo being listed as an inventor on the 331 Provisional Application, Circo demanded to be listed, stating "[m]y name is going on as an inventor, do you understand? Do you want a fucking paycheck? Do you want a fucking royalty?" Michael Aff., ECF No. 47-2, Page ID 1104-05.

> NOW THEREFORE, for valuable consideration, receipt and adequacy of which is hereby acknowledged, we have sold, assigned, and set over, and do hereby sell, assign, and set over, unto the Assignee and said Assignee's legal representatives, successors, and assigns, the entire right, title, and interest in and to said invention, said application, and the Letters Patent, both foreign and domestic, that may or shall issue thereon including all original, divisional, continuation, continuation-in-part, reissue, certificate of reexamination, and related applications.

Assignment, ECF No. 45-2, Page ID 328. In the Assignment, Jeffrey did "covenant and agree" not to "execute any writing or do any act whatsoever conflicting with" the terms of the Assignment, and to "render all necessary assistance in making application for . . . Letter Patent of the United States . . . on said invention." *Id.* at 328-29. The Assignment was recorded with the USPTO with respect to the '698 Application, '301 Application, and '684 Application.

On July 5, 2012, Circo fired Jeffrey from Battle Sports. Michael, who was paid for sales by commission and was not a regular employee, ceased working with Battle Sports around the time Jeffrey was fired. Michael Aff., ECF No. 47-1, Page ID 1103-06. Michael never received the royalties or sales commissions he allegedly was promised as "consideration" for his work on the OLP and the assignment of his rights in the OLP to Battle Sports. *Id.* at 1106.

On October 13, 2014, Anthony Schrager, Chief Operating Officer of Battle Sports, filed Substitute Statements in Lieu of an Oath of Declaration for Utility or Design Patent Application (Substitute Statements) with the patent filing for the '488 Patent regarding Michael and Jeffrey. On December 5, 2014, Schrager filed Substitute Statements with the patent filing for the '413 Patent regarding Michael and Jeffrey. On May 6, 2016, Schrager filed Substitute Statements with the patent filing for the '975 Patent regarding Michael and

4

Jeffrey. On each Substitute Statement form under "[c]ircumstances permitting execution of this substitute statement" the box "Inventor has refused to execute the oath or declaration under 37 CFR 1.63" is checked. Hale Aff., ECF No. 47-3, Page ID 1115-19. Jeffrey and Michael were unaware of the patent applications that were filed after their relationship with Battle Sports ended in July 2012 until sometime after the patents that are the subject of this case were issued, and neither Michael nor Jeffrey refused to sign an oath and declaration in connection with the patent applications or amendments.[5]

In June 2016, Battle Sports assigned its right, title, and interest in the Assignment to Active Brands Company, LLC, which later assigned its interest and right to sue for past infringement to Battle-ABC.

Battle-ABC's Amended Complaint, ECF No. 16, asserts claims for patent infringement and inducement of infringement based on Soldier Sports' manufacture of the Elite Air Lip Protector. Defendants have raised the affirmative defenses that the patents on the OLP are invalid or unenforceable by operation of 35 U.S.C. § 102 (invalidity due to lack of novelty), § 103 (invalidity due to obviousness), and § 112 (invalidity due to deficiencies in the specifications). Defendants have also asserted counterclaims for declaratory relief regarding invalidity and inequitable conduct. Jeffrey has also asserted counterclaims for unenforceability of the '488 patent family and tortious interference with economic relations, as well as the defense of lack of standing.

Battle-ABC seeks summary judgment on Defendants' defenses and counterclaims of invalidity, unenforceability, inequitable conduct, and the contention that Battle-ABC

---

[5] There is a dispute of fact as to whether Michael and Jeffrey were asked to sign and refused to sign the oath. For purposes of this Motion the Court will assume they were not asked and did not refuse.

lacks standing. Battle-ABC also argues that because Jeffrey is estopped from asserting invalidity, Battle-ABC is entitled to summary judgment on Jeffrey's counterclaim for tortious interference.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1043). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support

the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

**I. Assignor Estoppel Against Jeffrey**

"Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp.3d 507, 523 (D. Del. 2018) (citing *Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir.) *cert. denied*, 487 U.S. 1265 (1998). Assignor estoppel is based on the theory that an assignment is "the implicit representation by the assignor that the patent rights that he is assigning (presumably for value) are not worthless . . . To allow the assignor to make that representation at the time of the assignment (to his advantage) and later to repudiate it (again to his advantage) could work an injustice against the assignee." *Diamond*, 848 F.2d at 1224. "The doctrine of assignor estoppel is applied 'to prevent unfairness and injustice.'" *Hologic,* 325 F.Supp.3d at 523 (citing *Diamond,* 848 F.2d at 1224). "[A]n assignor should not be permitted to sell something and later assert that what was sold is worthless, all to the detriment of the assignee." *Id.* "[A]ssignor estoppel prevents an assignor from asserting that its own patent, for which it may have received value upon assignment, is invalid and worthless." *Id.* (quoting *Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 424 F.3d 1161, 1167 (Fed. Cir. 2005)). "The Federal Circuit recently reaffirmed the 'continued vitality of the doctrine of assignor estoppel.'" *Id.* (quoting *Mentor Graphics Corp. v. EVE–USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017)). Application of the doctrine of assignor estoppel is determined upon a balance of equities. *Shamrock Techs. Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990).

Assignor estoppel generally arises in the context of an anticipation or obviousness defense. *Hologic,* 325 F. Supp. 3d at 524 (citing *Diamond,* 848 F.2d at 1224); *see also Babcock v. Clarkson*, 63 F. 607, 609 (1st Cir. 1894) (stating "[T]he estoppel historically

has applied to invalidity challenges based on 'novelty, utility, patentable invention, anticipatory matter, and the state of the art.'") "However, the doctrine has also been applied with reference to a § 112 defense. *Diamond,* 848 F.2d at 1222*,* 1227; *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, No. 99-0182-CV-W-SOW, 2003 WL 24272366, at *1 (W.D. Mo. Oct. 15, 2003), *aff'd*, 424 F.3d 1161 (Fed. Cir. 2005). Assignor estoppel does not limit an assignor's ability to defend a subsequent patent suit in ways other than challenging validity. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1379 (Fed. Cir. 1998). The assignor is permitted to introduce evidence of prior art to narrow the scope of the assigned patent's claims in an effort to show that the accused device falls outside the scope of the assigned patent. *Id.* at 1380. An estopped party may also argue for a narrow claim construction, or that the accused devices are within the prior art and therefore cannot infringe. *Id.* at 1379–80. When assignee is asserting assignor estoppel, "the usual defenses to the contract of assignment, e.g. fraud or failure of consideration, may always be raised by an assignor." *Diamond,* 848 F.2d at 1228 (Newman, J. concurring); *see also Shamrock Techs.*, 903 F.2d at 794 (fear of job loss was not sufficient to overcome assignor estoppel due to duress).

On October 23, 2011, Jeffrey executed an Assignment which purported to assign "the entire right, title, and interest in and to said invention, said application, and the Letters Patent . . . that may or shall issue thereon" to Battle Sports, a predecessor of Battle-ABC. ECF No. 45-2, Page ID 328. Before he executed the Assignment, Jeffrey had full knowledge of the alleged inaccuracy of Circo's purported status as an inventor. Jeffrey Aff. ECF No. 47-1, Page ID 1100. Jeffrey also acknowledged the receipt of consideration in the Assignment document. Assignment, ECF No. 45-2, Page ID 328. Yet Defendants

argue that assignor estoppel does not apply because the Assignment was invalid. Defendants also argue that any assignor estoppel is negated by Battle-ABC's inequitable conduct related to the allegedly fraudulent post-Assignment Substitute Statements.

### A. Invalidity of Assignment

Defendants argue that the Assignment is invalid because it was obtained under duress and due to a failure of consideration. Battle-ABC argues that, even viewing the facts in the light most favorable to the Defendants, their claims that the Assignment was invalid fail as a matter of law and Battle-ABD is entitled to summary judgment on the issue of assignor estoppel.

*1. Failure of Consideration*

A failure of consideration "means the contract is valid when formed but becomes unenforceable because the performance bargained for has not been given." Lindsey *Int'l Sales & Service, LLC, v. Wegener*, 917 N.W.2d 133, 141 (Neb. 2018). "Failure of consideration occurs where, inter alia, the purpose of the parties' agreement or contract wholly fails." *Schuelke v. Wilson*, 587 N.W.2d 369, 376 (Neb. 1998).

"Partial failure of consideration in the case of an executed contract is not a ground for rescission." *D & S Realty, Inc. v. Cutler*, No. A-01-036, 2003 WL 105066, at *8 (Neb. Ct. App. Jan. 14, 2003) (citing 92 C.J.S. *Vendor and Purchaser* § 264 at 334 (2000)). "A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract". *Eliker v. Chief Industries, Inc.*, 498 N.W.2d 564 (Neb. 1993) (quoting *Klapka v. Schrauger*, 281 N.W. 612, 616 (Neb. 1938)). "Employment, salary and bonuses are valid consideration for [an] assignment." *Shamrock*, 903 F.2d at 794. "[T]he

burden of proving an affirmative defense rests upon the defendant—and failure of consideration is an affirmative defense." *Insured Fin. Servs. v. State Farm Ins. Co.*, No. 8:18-CV-93, 2018 WL 2120410, at *3 (D. Neb. May 8, 2018) (citing *Prod. Credit Ass'n of Midlands v. Eldin Haussermann Farms, Inc.*, 529 N.W.2d 26, 30-31 (Neb. 1995)).

The Assignment states that the assignment was made "for valuable consideration, receipt and adequacy of which is hereby acknowledged." ECF No. 45-2, Page ID 328. Royalties and sales commissions were the valuable consideration Michael was promised in exchange for his work inventing the OLP. Michael Aff., ECF No. 47-2, Page ID 1106. Michael alleges that he never received the promised royalties or sales commissions. *Id.* It is unclear from the record what valuable consideration was promised to Jeffrey in exchange for the assignment of his rights in the invention. However, Jeffrey continued to work for Battle Sports for approximately eight months following the execution of the Assignment, Jeffrey Aff., ECF No. 47-1, Page ID 1101, and Jeffrey does not allege that he did not receive whatever consideration he was promised under the Assignment. Nor have Defendants presented any evidence that Jeffrey did not receive consideration for his assignment of the rights in the OLP. Thus, Defendants' allegations of failure of consideration as to Michael, a non-party, will not preclude application of assignor estoppel as to the Defendants.

*2. Duress*

To be voidable because of duress, an agreement must (1) "be obtained by means of pressure brought to bear" and (2) "the agreement itself must be unjust, unconscionable, or illegal." *Gilkerson v. Neb. Colocation Centers, LLC*, 859 F.3d 1115, 1118 (8th Cir. 2017) (citing *City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 809 N.W.2d 725, 745

(Neb. 2011)). "An unconscionable agreement is one that is 'manifestly unfair or inequitable.'" *Rasby v. Pillen*, 905 F.3d 1097, 1100 (8th Cir. 2018) (quoting *Myers v. Neb. Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006)). The pressure or constraint must be such that it "compels a person to go against that person's will and takes away that person's free agency, destroying the power of refusing to comply with the unjust demands of another." *Bock v. Bank of Bellevue*, 434 N.W.2d 310, 315 (Neb. 1989). "The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do." *Bock*, 809 N.W.2d at 315 (citing *Lustgarten v. Jones*, 371 N.W.2d 668, 672 (Neb. 1985)). The burden of proof is on the party alleging duress. *Kosmicki v. State*, 652 N.W.2d 883, 893 (Neb. 2002) (citing *Lustgarten*, 371 N.W.2d at 672). "What constitutes duress is a question of law, but existence of duress is a question of fact." *Id*.

Defendants allege Circo's threats of physical violence and the threatened loss of pay or employment caused Jeffrey and Michael to execute the Assignment.

      a. Threats of physical violence

The alleged threats of physical violence Circo made against Jeffery are not evidence of duress because Defendants have failed to connect any such threats to the execution of the Assignment. According to Jeffrey, Circo was verbally abusive to him and other Battle Sports employees, screamed, and threatened violence to "bully people into doing what [Circo] demanded." Jeffrey Affidavit ECF No. 42-1, Page ID 1100. Jeffrey alleges that when he confronted Circo about not wanting to sign the Assignment because Circo was listed as an inventor, Circo "told [Jeffrey] that [he] had to sign the Assignment exactly as it was written if [he] 'wanted a fucking paycheck,'" and that "Circo has also

12

threatened [Jeffrey's] life and said [Circo] was going to kill [Jeffrey]." *Id.* Jeffrey felt he had no choice but to sign the Assignment because he "knew that Circo's threats were not idle or empty threats, due to the history [Jeffrey] had witnessed of Circo withholding checks." *Id.* at 1100-01. Jeffrey alleges "Circo used [Jeffrey's] paycheck, which [he] needed to support [his] wife and kids, as extortion for [Jeffrey] to make the assignment to Battle Sports." *Id.* Michael stated in his Affidavit "I witnessed Circo make physical threats against my brother Jeffery Evans. In particular, Circo told me in Bailey's parking lot that 'if [Jeffery] ever fucks with me, I will fucking kill him. I am not joking. I will fucking kill him!'" ECF No. 47-2, Page ID 1104-05. Michael also alleges that "during a company dinner, Circo threw a fork at [Michael] because [Michael] had picked a drink [Circo] did not like, and then threatened to come over the table and kick [Michael's] ass." *Id.*

Whether or not Circo had a history of threatening conduct, there is no evidence that he threatened anyone with physical harm with respect to the execution of the Assignment. Jeffrey alleges Circo threatened to kill him but does not specify when this threat was made or point to any circumstances tying the threat to the execution of the Assignment. Nor does Jeffrey allege that this threat influenced his decision. Michael's Affidavit also fails to allege that the threats he heard Circo make regarding Jeffrey were somehow tied to the execution of the Assignment, or that Jeffrey was aware of these alleged threats. Similarly, Michael does not allege he was threatened with physical violence in relation to the execution of the Assignment. The only threats Defendants have connected to the execution of the Assignment are threats Circo made with respect to employment and withholding of pay and royalties.

  b. Threats to terminate employment and withhold pay

13

Battle-ABC argues that the threat of loss of at-will employment or future royalties, without more, as a matter of law will not support a duress defense. Yet the Nebraska Supreme Court[6] has not foreclosed the proposition that threats of termination may support a claim for duress, *Lincoln Ben. Life Co. v. Edward*, 45 F.Supp.2d 722, 750 (D. Neb. 1999). At this stage of the proceedings, this Court cannot determine whether the employment relationship between Battle-ABC and Jeffrey entitled Battle-ABC to demand Jeffrey assign his patent rights without additional consideration beyond his employment, nor does the Court have information regarding what consideration Jeffrey was promised for the assignment. Even if a threatened loss of future employment is insufficient to support a claim of duress, Circo's statement to Jeffery that he had to sign the Assignment as written if he "wanted a fucking paycheck" can be reasonably interpreted as Circo threatening to withhold pay Jeffrey already earned. Accordingly, Defendants have presented sufficient evidence of duress to preclude summary judgment in favor of Battle-ABC on its claim of assignor estoppel.[7]

---

[6] Federal law determines the substantive requirements necessary for an agreement to constitute an assignment. 35 U.S.C. § 261; see also *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379–80 (Fed. Cir. 2009) ("Usually, federal law is used to determine the validity and terms of an assignment, but state law controls any transfer of patent ownership by operation of law not deemed an assignment."). However, state law applies to contractual disputes and interpretations of the parties' patent assignment agreements. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1320 (Fed. Cir. 2017) (citation omitted); *see also Keller v. Bass Pro Shop, Inc.,* 15 F.3d 122, 124 (8th Cir. 1994) (applying Arkansas law to a determine that a party was estopped from challenging a patent assignment due to alleged lack of consideration). Here, the issue is not whether the document constituted an assignment, the issue is whether the assignment, a contract, was voidable due to duress. Thus, state law will govern the issue of duress. Further, the parties rely on Nebraska law in their arguments and admit that there is no federal precedent on the applicability of duress.

[7] Battle-ABC also argues that Defendants' claims should be barred because of their failure to seek rescission in a timely fashion. However, "[w]hether one seeking to rescind a contract on the ground that it was procured by fraud or duress has acted with reasonable promptness is, ordinarily, a question of fact." *Gonzalez v. Union Pacific R.R. Co.*, 803 N.W.2d 424, 445 (Neb. 2011) (citation omitted). On the facts alleged here, the Court cannot say as a matter of law that Defendants failed to act within a reasonable time.

## B. Inequitable Conduct Counterclaim

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The elements of an inequitable conduct claim are (1) that an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) that the individual did so with a specific intent to deceive the PTO. *Exergen Corp., v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (citations omitted). When a party, fully aware of inventorship issues, has assigned their rights to another, Courts have applied assignor estoppel to prevent the assignor from challenging the patent. *Q.G. Producs. V. Shorty, Inc.*, 992 F.2d 1211, 1213 (Fed. Cir. 1993). However, "general principles of equity may preclude use of assignor estoppel to bar a viable equitable defense arising from post-assignment events." *Shamrock Techns.*, 903 F.2d at 795-96 (citation omitted).

At the time Jeffery signed the Assignment, he was aware that Circo was listed as a co-inventor of the OLP. Jeffrey Aff., ECF No. 47-1, Page ID 1100. Jeffrey was also involved, to some extent, in the application process. Emails, ECF No. 47-2, Page ID 1108-12. Yet Jeffrey had no involvement in the preparation or filing of the allegedly fraudulent Substitute Statements in 2014 and 2016. Jeffrey Aff., ECF No. 47-1, Page ID 1101-02; Hale Aff., ECF No. 47-3, Page ID 1113-15. Thus, assignor estoppel will not bar Defendants' inequitable-conduct claims based on the allegedly fraudulent Substitute Statements. However, Defendants' inequitable-conduct claim based on the

misrepresentation of inventors will be barred to the same extent as Defendants' defenses based on invalidity, should Battle-ABC ultimately succeed in claiming assignor estoppel.

As explained above, there are genuine questions of material fact regarding what benefits Circo threatened to withhold from Jeffrey if he did not sign the Assignment, and genuine questions of material fact as to Circo's status as an inventor. These questions of fact, combined with a lack of information regarding consideration for the Assignment and the terms of Jeffrey's employment, leave the Court unable to determine whether assignor estoppel should be applied to bar Jeffrey's affirmative defenses and counterclaims based on invalidity or unenforceability. However, if at a later time the Court finds assignor estoppel applicable to Defendants' affirmative defense of invalidity, such estoppel will also apply to the counterclaims for declaratory relief regarding invalidity, and tortious interference with economic relations.[8] Assignor estoppel will not bar Jeffrey's counterclaims for inequitable conduct and unenforceability of the '488 Patent Family,[9] to the extent they are based on the alleged post-Assignment Substitute Statements.

## II. Assignor Estoppel Against Soldier Sports

---

[8] Defendants do not specifically argue that these counterclaims survive partial summary judgment should the Court find assignor estoppel applicable. The counterclaim for declaratory relief regarding invalidity is premised on arguments against validity. The counterclaim for tortious interference with economic relations states that the interfering communications "are wrongful because they are not made in good faith, are made without proper investigation and knowing that the '488 Patent Family is invalid and therefore does not cover any products sold by Battle-ABC." Answer, ECF No. 23, Page ID 215. Thus, because both of these rely on the underlying defense of invalidity they will also be barred by assignor estoppel if the Court later finds that assignor estoppel is applicable.

[9] Defendants also fail to address the counterclaim for unenforceability of the '488 Patent Family. However, it is based on the failure to disclose and accurately represent to the USPO all material information known to the applicant and counsel during the prosecution of the '488 Patent and any subsequent patents filed thereunder. Due to the limited information before the Court on this claim it appears that it may be related to the inequitable conduct claim and thus it will be subject to the same limitations at this time.

"Assignor estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor." *Hologic, Inc.,* 325 F. Supp. 3d at 523 (citing *Diamond*, 848 F.2d at 1224). "Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of equities." *Id.* (quoting *Shamrock Techs*, 903 F.2d 793). "In other words, '[i]f an inventor assigns his invention to his employer company A and leaves to join company B, whether company B is in privity and thus bound by the doctrine will depend on the equities dictated by the relationship between the inventor and company B in light of the act of infringement.'" *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F.Supp.3d 499, 509 (D. Del. 2014) (quoting *Shamrock Techs.*, 903 F.2d at 793). "The closer that relationship, the more the equities will favor applying the doctrine to company B." *Id.* Status as the founder of a company is generally "dispositive of the issue of privity." *Juniper Networks*, 15 F.Supp.3d at 508; *see also Diamond*, 848 F.2d at 1224.

It is undisputed that Jeffrey is the founder and CEO of Soldier Sports. Considering this relationship and the balance of equities, the Court finds privity between Jeffrey and Soldier Sports. Thus, assignor estoppel will bar Soldier Sports' affirmative defenses and counterclaims to the same extent as Jeffrey's defenses and counterclaims.

### III. Standing

Battle-ABC moves the Court to make a definitive finding that it has standing to pursue its patent infringement case against Defendants. Defendants argue that Battle-ABC does not have standing because Battle-ABC's ownership interest in the Asserted Patents depends upon validity of the Assignment which they contend is invalid due to duress and failure of consideration. "Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective 'patentee'

17

under the statute and has standing to bring a suit in its own name for infringement." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995) (citation omitted); *see also Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) ("patentee or successor in title to the patentee may bring an action for patent infringement"). The Court has determined, for the reasons stated above, that issues of fact as well as a lack of information preclude the Court from determining whether the Assignment is valid at this time. Thus, the Court will deny Battle-ABC's request for summary judgment on Defendants' assertion that Battle-ABC lacks standing.

IT IS ORDERED:

1. Plaintiff Battle-ABC's Motion for Partial Summary Judgment, ECF No. 43 is granted, in part, as follows:

    a. Defendants shall not be allowed at trial to claim that the Assignment is invalid due to a failure of consideration;

    b. Assignor estoppel shall apply to Defendant Soldier Sports, LLC, to the same extent as it applies to Defendant Jeffrey Evans;

    c. If it is later determined that assignor estoppel applies to bar Defendants' affirmative defense of invalidity, it shall also bar Defendants' counterclaims for declaratory relief regarding invalidity and tortious interference with economic relations;

    d. If it is later determined that assignor estoppel applies to bar Defendants' affirmative defense of invalidity it shall also bar Defendants' counterclaims of inequitable conduct and unenforceability of the '488 patent family, except to

the extent they are based on the allegedly fraudulent post-Assignment Substitute Statements.

2. The Motion is otherwise denied.

Dated this 8th day of July, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge